UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES T. SULLIVAN, etc., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | 08 C 3669 |
| ) | |
| TAG PLUMBING CO., and BLUE LINE ) | |
| PLUMBING, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 of James T. Sullivan ("Sullivan"), as trustee for Plumbers' Pension Fund, Local 130, U.A. ("Pension Fund"); Plumbers' Welfare Fund, Local 130, U.A. ("Welfare Fund"); the Trust Fund for Apprentice and Journeyman Education and Training, Local 130, U.A. ("Apprentice Fund") (collectively"Funds"); Chicago Journeymen Plumbers' Local 130, U.A. ("Union"); Group Legal Services Plan Fund ("Legal Fund"); and the Plumbing Council of Chicagoland ("Plumbing Council") (collectively "Plaintiffs"). For the following reasons, Plaintiffs' motion for summary judgment is granted.

**BACKGROUND**[1]

Plaintiffs include the Union, which represents plumbers in Cook County, Illinois, and the Funds, a collection of multi-employer funds that receive contributions from employers for the benefit of their employees, as provided under collective bargaining agreements ("CBA") between employers and the Union. They bring this lawsuit to enforce their rights under a CBA for contributions and damages and an arbitration award against plumbing companies Tag Plumbing, Inc. ("Tag"), based in Skokie, Illinois, and Blue Line Plumbing Co. ("Blue Line"), based in Chicago, Illinois.

<u>The Audit</u>

The Union and Tag have been subject to a CBA since at least October 2003. One such CBA was signed on June 16, 2005. Under the CBA, Tag was obligated to make monthly contributions to the Funds based on the total hours of work performed that the CBA describes as falling under the Union's jurisdiction ("covered work"), whether Union members performed the work or not. Tag was also required to submit monthly reports with a detailed accounting of the total hours worked by its employees and its monthly contributions due to the Funds. If Tag did not timely comply with these requirements, it was bound to pay liquidated damages and interest on all contributions,

---

[1] Because Defendants failed to dispute Plaintiffs' Statement of Material Facts, Plaintiffs' facts are deemed admitted for the purposes of summary judgment. N.D. Ill. L.R. 56.1(b); *Schrott v. Bristol-Meyers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005).

as well as Plaintiffs' legal, audit and court fees spent attempting to collect past due contributions. The CBA further obliged Tag to make all of its books and records available to Plaintiffs' at Plaintiffs' request to allow for an adequate audit. Tag has not submitted a monthly report to Plaintiffs since July 2007.

Following the initiation of this suit and consistent with the Court Order of January 20, 2009, Legacy Professionals LLP ("Legacy"), Plaintiffs' auditor, reviewed Tag's and Blue Line's books and records to assess their compliance with the CBA from April 1, 2006 through June 30, 2009. The auditors treated Blue Line as Tag's successor, for reasons that will be made apparent momentarily. On January 15, 2010, Legacy issued its report ("Audit"). Neither Tag's nor Blue Line's records indicated the number of hours that each of its employees worked, nor the type of work that its employees performed. Tag's records showed that it employed both Union and non-Union members from November 2006 through January 2008. Blue Line's records showed that it employed Union and non-Union members from June 2008 through September 2008, but provided no information regarding the number of hours each person worked or the type of work that the individual performed. The Audit concluded that Tag and Blue Line owed contributions and other amounts to Plaintiffs totaling $275,040.17 as a result of the hours worked by these individuals. Defendants were also bound to pay an additional monthly payment of $2,944.62 after January 1, 2010 if they

failed to satisfy the Audit amount by that date. Defendants have made no payments on the Audit amount.

## Arbitration Award

Plaintiffs and Tag agreed under the CBA that the Joint Arbitration Board ("JAB"), a panel of arbitrators, would decide CBA-related disputes between Tag and one or all of the Plaintiffs. The JAB is vested with the authority to enforce the terms of the CBA against either Plaintiffs or Tag, and may assess fines or fashion other appropriate remedies.

On March 24, 2008, the JAB issued a Decision and Award ("Award") finding that Tag violated the CBA by failing to make contributions to Plaintiffs from October 1, 2003 through March 31, 2006. The JAB determined that Tag owed Plaintiffs $318,445.19 in delinquent contributions and fines. If Tag failed to pay the full Award amount within 30 days after decision, it had to reimburse Plaintiffs for all fees and expenses spent attempting to enforce the Award, including audit fees, attorneys' fees and court costs. The Award further required Tag to pay additional interest at the rate of $2,897.48 per month starting May 1, 2008 if it did not pay the Award amount by that date. Steven Tag, Tag's vice president and treasurer at that time, received notice of the Award on March 25, 2008. Defendants have made no payments to satisfy the Award or the accruing interest.

Tag and Blue Line

At some point during this lawsuit, Plaintiffs suspected that Tag and Blue Line were associated with each other such that the companies could be held liable for the other's obligations under the CBA. Steven Tag ("Steven"), a journeyman plumber, owned Tag and served as its president prior to 2005. Maggie Tag ("Maggie"), Steven's wife, became its president and sole shareholder beginning in 2005, while Steven became its treasurer and vice president. The change was made to allow Steven more time to work in the field. Tag's address was listed as Maggie and Steven's home. Throughout his time with Tag, Steven's duties included seeking out plumbing projects, performing plumbing work, obtaining proposals, purchasing materials, and balancing the company's checkbook. Although Maggie was Tag's president, her duties were limited to clerical work. She primarily focused her time and efforts on her career as a daycare center teacher.

In 2006 and 2007, Tag had five employees: Steven, Maggie, Carlton Tag ("Carlton"), a metal tradesman and apprentice plumber, Peter Kaczynski ("Peter"), an apprentice plumber, and Czeslaw Kuchiak ("Kuchiak"), a journeyman plumber. Carlton was Maggie and Steven's son, while Peter was Maggie's son and Steven's stepson. Steven and Maggie were Tag's only employees from January 1, 2008 until March 31, 2008. Tag has had no employees since that date.

Blue Line was incorporated in March 2008. Maggie made a $6,000.00 loan to Blue Line for start-up capital. She also helped to pay some of Blue Line's expenses, including workers' compensation insurance, liability insurance, and accounting fees. Steven and Carlton own the company: Steven owns 45% while Carlton owns the majority 55% share. Steven is Blue Line's secretary and its sole director. From July 2008 to June 2009, Steven calculated plumbing project proposals and performed on-site plumbing work. Blue Line relied on Steven's reputation to bring in business. Carlton is Blue Line's treasurer. Sarah Tag ("Sarah"), Carlton's wife, is Blue Line's president. Blue Line's address was listed as Sarah's and Carlton's home. In addition to Steven, Sarah, and Carlton, Blue Line employed Peter, his wife Angelique Kaczynski ("Angelique"), and non-Tag family members Adam Uzarewicz ("Uzarewicz") and Miroslaw Derus ("Derus"). As of July 2009, only Steven and Carlton worked for Blue Line.

Tag and Blue Line shared many of the same resources. They both stored plumbing materials at a small storage building co-owned by Steven, Maggie, and Peter and Angelique. Blue Line now owns three vehicles – two Dodge Sprinters and a Volkswagen Jetta – that were formerly owned by Tag. Blue Line also owns Steven's tools. In 2005, Tag obtained a loan of $100,000.00 from Cole Taylor Bank ("Bank"). At some point, Tag stopped making payments on the loan. Blue Line resumed those

payments, making five payments in 2008, with a balance of $19,030.02 as of January 2, 2009.

## Procedural History

On February 17, 2010, Plaintiffs filed their First Amended Complaint under the Earned Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145, and the Labor-Management Relations Act of 1947, 29 U.S.C. § 185. They alleged that Tag and Blue Line were liable for the amounts due under the Audit and the Award, as well as additional statutory damages. Now before the Court is Plaintiffs' motion for summary judgment. Defendants failed to respond to Plaintiffs' summary judgment motion or their Statement of Material Facts Local Rule 56.1. Plaintiffs filed their reply brief, and the case is now ripe for disposition.

## **LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 391-92 (7th Cir. 2011). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). When considering a motion for summary judgment, a court construes all

facts and draws all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2010).

## DISCUSSION

Plaintiffs argue that (1) Blue Line is subject to the CBA, and (2) Tag and Blue Line are jointly and severally liable for the Audit and Award amounts. We discuss these issues in turn.

### I. Blue Line's Liability Under the CBA

Plaintiffs assert that Blue Line is bound by the CBA that the Union and Tag signed, and that it is therefore liable to Plaintiffs for not complying with the CBA's contribution and reporting requirements after it incorporated. Under Section 14.1 of the CBA ("Section 14.1"):

> This Agreement is binding upon the Employer . . . and upon any other business entity within the trade and territorial jurisdiction of the Union which is owned, managed, controlled and/or operated by Employer or its principals or any of them.

Collective bargaining agreements are interpreted under federal law. *Int'l Union v. ZF Boge Elastmetall LLC*, 649 F.3d 641, 646 (7th Cir. 2011). The Court understands unambiguous terms by their natural meaning. *Cent. States, Southeast & Southwest Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 674 F.3d 630, 634 (7th Cir. 2012).

Under Section 14.1 of the CBA, Blue Line would be subject to the CBA if it (1) was owned, managed, controlled or operated by any of Tag's principals;

(2) operated in the same territory as the Union; and (3) performed the same work as the Union's members. Steven was Tag's treasurer and vice president as of March 2008. He sought out and performed plumbing projects, purchased materials, and balanced the company's ledger. As a manager and operator of Tag, Steven was its principal. Blue Line is a plumbing contractor based in Chicago, Illinois. As Blue Line's co-owner, secretary and director, Steven is a principal of Blue Line's.

Because Steven owned or managed both Tag and Blue Line, and both businesses do plumbing work primarily in Cook County, Blue Line is subject to the CBA.

## II. Blue Line's Liability for Tag's Debts under the Audit and Award

Plaintiffs assert that Blue Line is jointly and severally liable for the claims that it brings against Tag because the two firms operated as a single employer. "[W]hen two entities are sufficiently integrated, they will be treated as a single entity," with each being bound for the other's obligations under a CBA. *Moriarty v. Svec*, 164 F.3d 323, 332 (7th Cir. 1998). In determining whether two businesses are a single employer, the Court looks to the following four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. *Trustees of Pension, Welfare & Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Elec. Co.*, 995 F.2d 785, 788 (7th Cir. 1993) (citation omitted). The Court resolves the issue by looking at the totality of the circumstances. *Id.*

Tag and Blue Line share common management and ownership. Steven co-owns Blue Line and is the company's secretary and director. Maggie has been Tag's president and sole shareholder since 2005. While Steven technically relinquished ownership and his official role as Tag's president in 2005, he remained as the company's treasurer and vice president. None of the evidence in the record suggests that his duties or his involvement in the company abated as a result of his title change or the transfer of ownership to his wife. Meanwhile, Maggie's responsibilities were limited to clerical work, despite her sole ownership and role as president. Under these circumstances, Steven's de facto management and Maggie's ownership are sufficient to establish his ownership in Tag. *See NLRB v. Dane Cnty. Dairy*, 795 F.2d 1313, 1322 (7th Cir. 1986) (family control may constitute common ownership and control); *but cf. Favia*, 995 F.2d at 788 (common ownership among spouses is not established where they each own and actively manage separate enterprises).

The evidence also indicates that Tag's and Blue Line's operations and labor relations were sufficiently integrated. Blue Line traded on the reputation that Steven earned when he was with Tag. It took over ownership of three vehicles from Tag, as well as the same storage space that Tag used; a space co-owned by Steven, his wife Maggie, Maggie's son Peter and Peter's wife Angelique. Blue Line assumed Tag's debts on the three vehicles as well as on the Bank loan. Finally, there was substantial overlap in the two companies' respective workforces. Tag employed only five

employees: Steven, Maggie, Carlton, Peter, and Kuchiak. Blue Line employed Steven, Carlton, Sarah, Peter and Angelique, Uzarewicz, and Derus. Three of Tag's five employees – Steven, Carlton, and Peter – also worked for Blue Line. Of the six employees who worked for just one of the companies, three of them – Maggie, Sarah, and Angelique – were members of the Tag family.

Due to substantial overlap of ownership, management, personnel, and resources between the companies, they are deemed a single employer. Blue Line is therefore equally responsible for Tag's liabilities arising under the CBA.

## III. Audit Liability

Plaintiffs maintain that they are entitled to summary judgment in enforcing the terms of the Audit against Defendants. An employer is obligated to make contributions to a multi-employer plan if a CBA requires it to do so. 29 U.S.C. § 1145. Under the CBA, Tag was required to make contributions to Plaintiffs for all hours worked by employees performing covered work, as well as covered work performed by non-Union members.

<u>Contributions Based on Hours Worked by Tag and Blue Line Employees</u>

The Audit concluded that both Tag and Blue Line failed to report and pay contributions that it was bound to make under the CBA. The Audit found that Tag failed to report and pay contributions based on the following employees' work:

- 1,320 hours worked by Peter between March 2007 and October 2008;
- 536 hours worked by Kuchiak between June 2007 and November 2007;
- 1,760 hours worked by Steven between June 2007 and March 2008; and
- 1,640 hours worked by Carlton between March 2007 and December 2007.

The CBA requires that Defendants make contributions on all hours of covered work performed by apprentice or journeymen plumbers and metal tradesmen. Thus, hours worked by Peter, an apprentice plumber, Steven and Kuchiak, journeymen plumbers, and Carlton, an apprentice plumber and metal tradesman, are covered under the CBA.

The Audit also found that Blue Line failed to report and pay contributions as follows:

- 163.71 hours worked by Peter between November 2008 and June 2009;
- 2,080 hours worked by Steven between June 2008 and June 2009;
- 2,080 hours worked by Carlton between June 2008 and June 2009;
- 88.82 hours worked by Uzarewicz between July 2008 and August 2008; and
- 276.57 hours worked by Derus between July 2008 and November 2008.

The CBA provided for the employer to make contributions to Plaintiffs for covered work performed by both Union and non-Union member employees. So although Uzarewicz and Derus were not Union members, Blue Line is liable to Plaintiffs for the hours of work that they performed.

The CBA requires employers to provide itemized records to reflect the number of hours worked by its employees. Blue Line's records, tax returns and payroll records reflect each employee's gross compensation, but not the number of hours that each employee worked. Legacy calculated the number of hours that each employee worked by dividing each employee's gross compensation by the prevailing journeyman or apprentice wage, whichever rate was applicable.

ERISA requires that employers maintain records of its employees' hours to enable the calculation of benefits due and to fulfill the employer's reporting duties. 29 U.S.C. § 1059(a)(1); *Ill. Conf. of Teamsters & Emplrs. Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1367 (7th Cir. 1995). The records "must be contemporaneous time records that reflect the type of work performed, the date the work was performed, and the work location." *Trustees of Chicago Painters v. Destiny Decorators, Inc.*, No. 07 C 4236, 2009 WL 3188687, at *6 (N.D. Ill. Sept. 30, 2009) (citing *Laborers' Pension Fund v. RES Envtl. Servs., Inc.*, 377 F.3d 735, 739 (7th Cir. 2004). If an ERISA plan can show that an employer's records are deficient and "produces an apparently sound accounting suggesting that money is owed," the burden shifts to the employer to establish that it complied with the plan. *Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264-65 (7th Cir. 2003). To carry its initial burden, the ERISA plan must show that "individuals for which

[the ERISA plan] seek[s] to recover contributions performed some work during the audit time period." *Destiny Decorators, Inc.*, 2009 WL 3188687, at *6. If the employer does not provide an adequate explanation, the Funds are entitled to summary judgment. *Trustees of Chicago Reg'l Council of Carpenters Pension Fund v. Riteway-Huggins Constr. Servs., Inc.*, No. 07C6623, 2010 WL 960360, at *3 (N.D. Ill. Mar. 15, 2010).

Here, Legacy submitted a detailed report calculating the number of hours worked by Defendants' employees. Plaintiffs have satisfied their initial burden by supplying the Audit, coupled with an absence of Defendants' records contradicting the report's calculations or conclusions. *See RES Envtl. Servs.*, 377 F.3d at 738-39. Because Defendants do not carry their evidentiary burden, they are liable for this section of the Audit.

Contributions Based on Hours Worked by Tag and Blue Line Subcontractors

Under the CBA, all subcontractors hired by the employer to perform covered work must be signatories to a CBA with the Union. If an employer hires a non-signatory subcontractor, the employer is required to make contributions toPlaintiffs for the hours of covered work performed by the subcontractor.

The Audit found that Tag was liable for 281.93 hours of contributions for work performed by non-signatory subcontractors. Tag has submitted no records demonstrating the purpose of its payments to these contractors. Tag's general ledger indicates that these payments were for "Sublet Labor." The Audit also showed that

Blue Line was liable for 932.35 hours of covered work performed by non-signatory subcontractors. Blue Line has submitted no records reflecting the type of work that these subcontractors performed. Its general ledger notes that the payments were for "Outside Service."

As discussed above, Defendants have failed to submit any evidence disputing the Audit's findings. The presumed validity of the Audit's findings therefore remain intact. *See Reinke Insulation Co.*, 347 F.3d at 264-65. The undisputed evidence shows that Defendants are liable for this portion of the Audit.

## Audit Damages

Under the CBA and ERISA, Plaintiffs are entitled to damages under the Audit. *See* 29 U.S.C. § 1145. Plaintiffs ask for damages, interest, double interest, and liquidated damages as a result of Defendants' delinquent contributions. Plaintiffs also request that Defendants reimburse them the cost of procuring the audit.

In accordance with the Audit, Plaintiffs request judgment for the following: $196,308.07 for Defendants' delinquent contributions, $145,476.81 in accrued interest as of May 30, 2012 plus an additional $2,944.62 per month, and $15,704.65 in liquidated damages. Plaintiffs additionally seek double interest under ERISA for $145,476.81 plus $2,944.62 per month in accruing interest. *See* 29 U.S.C. § 1132(g)(2)(B). Finally, Plaintiffs seek $7,177.10 as reimbursement for the cost of the audit, as permitted by ERISA. *See id.* (E). Each of these amounts is supported by

undisputed documentary evidence. The Court grants Plaintiffs' summary judgment motion for damages under the Audit, and awards them $510,143.44 with monthly interest continuing to accrue.

## IV. JAB Award

Plaintiffs argue that it is entitled to summary judgment in enforcing the JAB Award against Defendants. The JAB was formed under the CBA to which the Union and Tag were bound covering the time period from October 1, 2003 until March 31, 2006. The JAB found that Tag was delinquent in making contributions to Plaintiffs, and was therefore liable to Plaintiffs in the amount of $318,445.09 in damages and fines. The allocation of Defendants' liability is itemized as follows:

| | | | |
|---|---|---|---:|
| a. | Pension Fund | - | $59,529.21 |
| b. | Welfare Fund | - | 105,811.76 |
| c. | Apprentice Fund | - | 10,998.77 |
| d. | Legal Fund | - | 8,272.73 |
| e. | Plumbing Council | - | 7,371.87 |
| f. | Savings Plan | - | 34.50 |
| g. | Working Dues | - | 1,146.71 |
| h. | Liquidated Damages | - | 15,453.24 |
| i. | Interest (through March 15, 2008) | - | 109,826.30 |

The Award required Tag to make additional monthly interest payments to Plaintiffs in the amount of $2,897.48 beginning May 1, 2008 if Tag did not satisfy the Award by that date. As of May 31, 2012, that amount has accrued to $141,976.52. Plaintiffs also ask for double interest in the amount of $251,802.82 as of May 31, 2012, with interest continuing to accrue. *See* 29 U.S.C. § 1132(g)(2)(C).

An arbitration award is intended to be the final resolution of a dispute, and will be upheld by a reviewing court so long as the arbitrator's award "draws its essence" from the CBA. *Nat'l Wrecking Co. V. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993) (citation and quotation omitted). Furthermore, an arbitrator's award is final unless a party files a timely suit to vacate. *Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996). Failure to challenge an arbitration award within 90 days renders it final. 710 ILCS 5/12(b); *Gilchrist*, 87 F.3d at 870.

The undisputed evidence demonstrates that Defendants have made no payments to Plaintiffs to satisfy the Award. Nor have they challenged the Award by filing a suit to vacate within 90 days of the Award. Summary judgment in favor of Plaintiffs is therefore granted in the amount of $712,224.43, with monthly interest continuing to accrue.

**V.    Attorneys' Fees**

Finally, Plaintiffs ask that the Court award them reasonable attorneys' fees and litigation costs, as permitted under the CBA and ERISA. Plaintiffs maintain that they have incurred $44,624.48 in attorneys' fees and litigation costs. This amount includes $42,046.50 for 234.10 hours spent by Plaintiffs' attorneys, and $1,110.00 for 13.2 hours by Plaintiffs' attorneys' support staff. Plaintiffs also seek reimbursement for court filing fees, service of process, certified copy charges to the State of Illinois, and legal research, court reporter, photocopy, facsimile, and postage charges and fees adding up

to $1,467.98. Plaintiffs have submitted an affidavit by one of their attorneys, Douglas A. Lindsay, attesting to these expenses, along with an attached itemized record of time and money spent prosecuting this lawsuit.

ERISA allows the trustee of a prevailing benefit plan to recover reasonable attorneys' fees and litigation costs. 29 U.S.C. §§ 1132(g)(2)(D), (E). In determining reasonable attorneys' fees, the Court assesses whether the number of hours spent on the litigation and the hourly fees are reasonable. *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 544 (7th Cir. 2009). The Court finds that Plaintiffs' attorneys spent a reasonable number of hours presenting this case for a reasonable hourly fee. The Court further finds that reimbursement of litigation costs is appropriate. Plaintiffs' motion for reasonable attorneys' fees and litigation costs totaling $44,624.48 is therefore granted.

## CONCLUSION

For the foregoing reasons, summary judgment in favor of Plaintiffs is granted. Defendants are jointly and severally liable to Plaintiffs for $1,266,992.35, with interest accruing on a monthly basis in accordance with the reasons above.

                                              Charles P. Kocoras
                                              United States District Judge

Dated:  September 4, 2012